# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 24-CR-53-CJW-MAR |
| Plaintiff, | |
| vs. | **ORDER** |
| BENJAMIN PAUL EGLI, | |
| Defendant. | |

_____

## I. INTRODUCTION

This matter is before the Court on the government's Objection (Doc. 46) to the Report and Recommendation (Doc. 43) of the Honorable Mark A. Roberts, United States Magistrate Judge. On August 16, 2024, defendant filed a Motion to Suppress. (Doc. 24). The government timely filed a resistance. (Docs. 26 & 31). On August 27, 2024, Judge Roberts held a hearing on the motion. (Doc. 32). On September 24, 2024, Judge Roberts issued his Report and Recommendation, which recommends that the Court deny the Motion to Suppress. On October 8, 2024, the government timely filed its Objection. (Doc. 46). For the following reasons, the government's Objection (Doc. 46) is **sustained in part and overruled in part**, the Report and Recommendation (Doc. 43) is **adopted in part and modified in part**, and defendant's Motion to Suppress (Doc. 24) is **denied**.

## II. STANDARD OF REVIEW

When a party files a timely objection to a magistrate judge's report and recommendation, a "judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendation to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge must consider de novo any objection to the magistrate judge's

recommendation."); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (noting that a district judge must "undertake[ ] a de novo review of the disputed portions of a magistrate judge's report and recommendations"). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions."). It is reversible error for a district court to fail to engage in a de novo review of a magistrate judge's report and recommendation when such review is required. *Lothridge*, 324 F.3d at 600. Accordingly, the Court reviews the disputed portions of the Report and Recommendation de novo.

### III. FACTUAL BACKGROUND [1]

In the summer and fall of 2023, Tipton Police Department Officer Bradley Peck was investigating a "cyber tip" from the National Center for Missing and Exploited Children. The tip suggested a Verizon user with a certain phone number had uploaded three images of "apparent child pornography." Verizon linked the phone number to "A." In December 2023, Officer Peck contacted and interviewed A. at the police department. A. identified defendant as her boyfriend and stated that defendant used the phone number at issue. Officer Peck asked A. if he could speak to defendant, and A. agreed to see if defendant was willing. A. then drove home and returned to the police department with defendant, where Officer Peck interviewed defendant.

During Officer Peck's interview of defendant in December 2023, defendant told Officer Peck he was still in possession of the phone in question and admitted that child

---

[1] After reviewing the Hearing Transcript (Doc. 35), the Court finds that Judge Roberts accurately and thoroughly set forth the relevant facts in the Report and Recommendation. The Court will, therefore, only briefly summarize the facts here. When relevant, the Court relies on and discusses additional facts in conjunction with its legal analysis.

pornography was possibly on it. Defendant also stated that anything on the phone belonged to him. Defendant's statements during the December 2023 interview would later be included in an April 2024 affidavit in support of a warrant application which sought permission to search defendant's residence, defendant's vehicle, and defendant's person.

At the conclusion of the December 2023 interview, Officer Peck followed A. as she drove defendant back to their residence. They entered the residence together, and defendant retrieved the phone in question and handed it to Officer Peck. Defendant then signed a "Consent to Search Mobile Device" form. Three months after Officer Peck obtained defendant's phone, in March 2024, a forensic report regarding the phone was generated. Officer Peck reviewed the report and videos on the phone, and then he forwarded the report and information about the videos to the FBI and the Iowa Division of Criminal Investigation ("DCI").

In April 2024, FBI Special Agent Kent Moore went to defendant's residence along with FBI Special Agent Derek Miller and DCI Special Agent Mike McVey. They proceeded to interview defendant in an unmarked law enforcement vehicle. Defendant made additional statements that were also included in the subsequent affidavit in support of the search warrant application.

The application which led to an April 2024 search warrant appears to have been finalized shortly after the April 2024 interview of defendant in the law enforcement vehicle. The affidavit contained statements by defendant from the December 2023 interview and the April 2024 interview. The affidavit also described items found on the phone during the forensic search after it was seized by Officer Peck.

## IV. ANALYSIS

In the Motion to Suppress, defendant seeks to suppress "Any and all electronic devices seized pursuant to any search warrants in April 2024." (Doc. 24, at 1). Judge Roberts found that neither the December 2023 interview nor the April 2024 interview were "custodial" interrogations for purposes of *Miranda*, and that defendant's statements in both interviews were voluntary and not the product of coercion. (Doc. 43, at 13–18). Judge Roberts also found that defendant voluntarily consented to the search of his phone in December 2023. (*Id.*, at 18–19). From these findings, Judge Roberts concluded his Report and Recommendation with the recommendation that defendant's Motion to Suppress be denied. Neither party objected to that recommendation.[2] Having conducted its own de novo review of Judge Roberts' Report and Recommendation, the Court concurs with his legal analysis and accordingly **denies** defendant's Motion to Suppress.

Judge Roberts also included an extensive "Alternative Outcomes" section in his Report and Recommendation. (*Id.*, at 19–26). Judge Roberts began by stating that if either of the two interviews were custodial and, therefore, a *Miranda* warning should have been given to defendant, then the statements he made in that interview should be suppressed for trial purposes and, furthermore, that those unwarned statements should not have been included in the search warrant—and, if removing those statements from the warrant removes the basis for probable cause, then any evidence seized in the search based on that warrant must also be suppressed. (Doc. 43, at 20) (citing *United States v. Rodriguez*, 834 F.3d 937, 942 (8th Cir. 2016), *United States v. Swope*, 542 F.3d 609 (8th Cir. 2008), and *Murray v. United States*, 487 U.S. 533, 542 (1988)). Similarly, Judge Roberts stated that if defendant did not voluntarily consent to the search of the

---

[2] Judge Roberts also found that even if the interviews were custodial and defendant's consent to the phone search was involuntary, evidence seized pursuant to the April 2024 search warrant would be admissible under the *Leon* good faith exception. (Doc. 43, at 24–26). Neither party objected to this finding.

phone, then the information gleaned from that search also should not have been included in the search warrant—and, if removing that information from the warrant removes the basis for probable cause, then any evidence seized in the search based on that warrant must be suppressed. (*Id.*, at 22). Applying this framework, Judge Roberts conducted a thorough analysis of alternative scenarios and their corresponding legal conclusion as to whether evidence obtained from the search warrant should be suppressed, represented by the following matrix:

| December 2023 Interview: **"Custodial"?** | April 2024 Interview: **"Custodial"?** | Consent to Search Phone: **Involuntary?** | Warrant After Removing Impermissible Information: Still Supported by **Probable Cause?** | Evidence Obtained from Warrant: **Suppressed?** |
|---|---|---|---|---|
| Yes | No | No | Yes | No |
| No | Yes | No | Yes | No |
| No | No | Yes | Yes | No |
| Yes | No | Yes | No | *Yes* |
| No | Yes | Yes | Yes | No |
| Yes | Yes | Yes | No | *Yes* |

(*Id.*, at 20–24).

In its Objection, the government objects to the nature of the legal analysis conducted by Judge Roberts. The basis of the government's Objection is the United States Supreme Court case of *United States v. Patane*, 542 U.S. 630 (2004). In *Patane*, police arrested Patane and, upon doing so, failed to completely advise him of his *Miranda* rights. 542 U.S. at 635. A police detective then asked Patane about a gun. *Id.* Patane told the detective where the gun was, gave the detective permission to retrieve it, and the detective found it and seized it. *Id.* In a plurality opinion, Justices Thomas, Scalia, and

5

then-Chief Justice Rehnquist rejected Patane's attempt to suppress the gun under the fruit-of-the-poisonous tree doctrine based on the *Miranda* violation. The plurality opinion explained that because the introduction of nontestimonial evidence at trial does not implicate the Fifth Amendment's Self-Incrimination Clause, failure to give *Miranda* warnings does not require suppression of the nontestimonial fruits of "unwarned" but voluntary statements. *Id.* at 636–37. Put differently, even though unwarned but voluntary statements must themselves be suppressed under *Miranda*, *Miranda*'s protections go no further and do not require application of the fruit-of-the-poisonous tree doctrine, so nontestimonial evidence derived from those statements remains admissible. *Id.* at 642. Justices Kennedy and O'Connor concurred, stating that admission of nontestimonial physical fruits "does not run the risk of admitting into trial an accused's coerced incriminating statements against himself." *Id.* at 645.

Here, the government asserts that Judge Roberts' legal analysis was flawed and that *Patane* should apply such that, even if the December 2023 interview and the April 2024 interviews were custodial and defendant should have received a *Miranda* warning, evidence obtained as fruits of those statements (i.e., evidence seized pursuant to the April 2024 search warrant) should nevertheless be admissible, as this would not violate defendant's Fifth Amendment rights under *Miranda*.

The Court finds the government is partially correct, and the explanation is nuanced. Judge Roberts, assuming in the alternative that defendant was "in custody" during either interview, asked whether fruits of those statements should nevertheless be admissible under the independent source doctrine, which is an exception to the fruit-of-the-poisonous tree doctrine. The fruit-of-the-poisonous tree doctrine and (the accompanying exception thereto) the independent source doctrine, however, have application here, if any, to Fourth Amendment constitutional violations (which would

involve asking whether defendant was unlawfully "seized"), and not Fifth Amendment *Miranda* violations (which asks whether defendant was "in custody").

The fruit-of-the-poisonous tree doctrine is an extension of the exclusionary rule, which "reaches not only primary evidence obtained as a direct result of an illegal search or seizure" and requires its suppression, "but also evidence later discovered and found to be derivative of an illegality or fruit of the poisonous tree." *Segura v. United States*, 468 U.S. 796, 804 (1984) (internal quotation marks omitted). The independent source doctrine holds that evidence obtained as fruits of a Fourth Amendment violation—a violation such as, for instance, the unlawful "seizure" (i.e., arrest) of a person—may still be admissible if the later fruits were supported by an independent, taint-free source. *See, e.g.*, *Murray*, 487 U.S. at 539–41; *Swope*, 613–15. Judge Roberts' analysis of whether evidence obtained from the April 2024 warrant should be suppressed was based on the assumption *not* that defendant was "in custody" within the meaning of the Fifth Amendment for purposes of *Miranda*, but rather that defendant had been unlawfully "seized" within the meaning of the Fourth Amendment when he made his statements. The fruit-of-the-poisonous tree suppression doctrine (to which the independent source doctrine is an exception) applies only to the latter assumption, not the former.

The Court concludes that the appropriate alternative analysis should be framed as follows. If defendant was "in custody" within the meaning of the Fifth Amendment for purposes of *Miranda* during either interview, yet his statements were voluntary (as Judge Roberts found), then his statements should be suppressed, *but* the exclusionary rule does not extend to the nontestimonial physical fruits of those statements, which are therefore admissible. *Patane*, 542 U.S. at 635–37 (finding that the physical fruits of Patane's unwarned voluntary statements were admissible despite *Miranda* violation after Patane had been lawfully arrested, not implicating any Fourth Amendment violation concerns). If, however, defendant was unlawfully "seized" within the meaning of the Fourth

Amendment during either interview, then his statements should be suppressed, and the fruit-of-the-poisonous tree doctrine should exclude fruits of those statements, including, presumably, evidence seized pursuant to the April 2024 search warrant. *See United States v. Villa-Gonzales*, 623 F.3d 526, 531–535 (8th Cir. 2010) ("In *Patane*, the unwarned statements were made after a lawful arrest. In this case, by contrast, [defendant]'s unwarned statements to [police] were themselves fruits of an illegal seizure.") (citation omitted).[3]

Yet, in the latter event that defendant was unlawfully "seized" within the meaning of the Fourth Amendment, the independent source doctrine would then also be applicable, which would prevent exclusion of those fruits *if*—as Judge Roberts asked—the warrant application is still supported by probable cause after the "tainted" information is removed. *Swope*, 542 F.3d at 613–14. Thus, in the latter event that defendant was unlawfully "seized" (as distinct from being "in custody"), Judge Roberts' analysis would be rendered correct from the perspective of the legal framework he applied, and his analysis would, in theory, continue to stand. In other words, to the extent Judge Roberts

---

[3] *Villa-Gonzales* helpfully illustrates the same distinction the Court is making here. Another district court, relying on *Villa-Gonzales*, helpfully summarized that distinction as follows:

> In *United States v. Villa–Gonzalez*, there had been both a *Miranda* violation as well as a Fourth Amendment violation. Under those circumstances, the court refused to apply *Patane* to the defendant's motion to suppress physical evidence; instead the court applied *Wong Sung* [sic] to suppress. Although the court noted that both *Villa–Gonzalez* and *Patane* involved a *Miranda* violation, there was a crucial difference. In *Patane*, the defendant had already been lawfully arrested at the time his *Miranda* rights were violated, while under the facts of *Villa–Gonzalez*, the defendant's unwarned statements themselves were fruits of an illegal seizure under the Fourth Amendment. Under these circumstances, the court held, the analysis of *Wong Sun* [i.e., fruit of the poisonous tree] and not *Patane* applies.

*United States v. Johnston*, No. CR 14-50028-JLV, 2014 WL 3573406, at *20 (D.S.D. July 21, 2014)

applied the independent source doctrine framework to the facts, that application stands only upon a finding that defendant has been unlawfully "seized" during either interview. But Judge Roberts did not analyze whether defendant was unlawfully "seized," only whether he was "in custody" (and of course concluded that he was not "in custody"). And defendant did not argue he was unlawfully "seized," only that he was "in custody". Thus, the government is correct that in the alternative, to the extent that defendant *was* "in custody" and *was not* unlawfully "seized," *Patane* applies, and the evidence obtained pursuant to the April 2024 search warrant is admissible. Furthermore, that evidence remains admissible even in the alternative that the search of defendant's phone was involuntary as would require the fruits of that unlawful search to be suppressed as a Fourth Amendment violation (a subject which the Court takes up next). This is so because, as Judge Roberts found, even without the information gleaned from the phone search, police would have had probable cause to obtain the search warrant based on defendant's interview statements. (Doc. 43, at 22–23). Indeed, as the Court has now clarified, absent those statements being tied to a Fourth Amendment violation, although they are inadmissible against defendant at trial under *Miranda*, *Miranda*'s protections go no further and would not prevent police using them to obtain a warrant to ultimately procure physical evidence. The Court thus **sustains** the government's Objection to the extent it is consistent with the foregoing analysis.

Judge Roberts concluded that defendant's consent for police to search his phone was voluntary. (*Id.*, at 18–19). Judge Roberts properly conducted this inquiry under the legal framework asking whether the government met its burden to show that defendant knowingly and voluntarily consented to the warrantless search so as to preclude a Fourth Amendment violation. *See* (*id.*, at 11–12) (stating the applicable law; *id.*, at (18–19) (applying that law). In his "Alternative Outcomes" section, Judge Roberts asked whether evidence obtained as fruits of information gleaned from the phone search would still be

found even if defendant's consent was involuntary. The government objects that Judge Roberts applied the wrong legal framework here too, and that *Patane* should apply. But here, Judge Roberts correctly applied the fruit-of-the-poisonous-tree doctrine because fruits of the involuntary phone search would derive from a Fourth Amendment violation (i.e., a warrantless, involuntary search), and Judge Roberts then correctly applied the independent source doctrine to ask whether those fruits would have been found even after redacting the information gleaned from the phone search from the application for the April 2024 search warrant. And as Judge Roberts found, police would have had probable cause to obtain the April 2024 search warrant based solely on defendant's interview statements, thus providing an independent source to prevent the exclusion of evidence seized pursuant to the warrant. (*Id.*, at 22–23). Thus, the Court **overrules** the government's objection to the extent it argues *Patane* applies to fruits of the search of the phone.

## V. CONCLUSION

For these reasons, the Court **adopts** the Report and Recommendation (Doc. 43) to the extent it is consistent with the foregoing opinion and otherwise **modifies** it to comport with the legal framework set forth above. The government's Objection (Doc. 46) is **sustained in part and overruled in part** and defendant's Motion to Suppress (Doc. 24) is **denied**.

**IT IS SO ORDERED** this 15th day of November, 2024.

_____
C.J. Williams, Chief Judge
United States District Court
Northern District of Iowa